*218
 
 Battle, J.
 

 The case agreed does not state what was the objection taken to the recovery of the relators upon the bond sued on, nor the ground upon which the objection, whatever it was, was overruled by his Honor. If it were that the defendants were not bound on the bond in question, which they executed in Sept., 1853, for any default in office, committed by the clerk after he had failedto renew his bonds in Sept., 1S51, as required by law, the objection was not sustainable, and his Honor was right in deciding against it. The 11th section of the 19th chapter of the Bevised Statutes, which requires that clerks of the County and Superior Courts shall annually renew the bonds, which by the 7th section of the same chapter, and the 11th section of the 28 th chapter, they are required to give, declares only that by a failure to make such renewal, their offices shall be forfeited, and not that they shall be absolutely void. If, therefore, any clerk shall continue in the exercise of the duties of his office, notwithstanding his failure to renew his bonds and shall be guilty of any default therein, his sureties will undoubtedly be liable upon the bond already given, until the cause of forfeiture is acted Upon by the Court, and he is, on account of it, ejected from the office, he is, to all intents and purposes, the clerk of the Court, and liis sureties, upon any bond, which ho may have given previous to any default, will be responsible for it while he continues in office during the term for which he was elected. Had he renewed his bond, as he ought to have done, they would have been accumulative, as has been often decided, and surely, the omission to renew them, cannot have the effect to discharge the sureties on the bond or bonds already given.
 

 But there is another objection presented by the case, which is. in our opinion, fatal to the action. At the time when the principal defendant was elected, to wit, in 1853, the Bevised Statutes were in force, and the case is to bo governed by the enactments therein contained. The 28th chapter concerning ‘‘county revenue and county charges” in the lltli section, provides that “ the clerk of each and every county and superior court of law, shall give, bond with approved security to
 
 *219
 
 the court whereof he is clerk, payable to the State of North Carolina, in the sum of four thousand dollars, conditioned for the due performance of the duties enjoined in this act.” These duties will he found prescribed in the 6th, 9th and 10th sections of the act, and consist in receiving and paying over all tax fees on suits, fines, forfeitures, &c., and rendering an account annually, &c. The 'Tth section of the 19th chapter declares, that in addition to the bonds above mentioned, each and every clerk shall give a bond in the penal sum of ten thousand dollars, payable to the State, and “ conditioned for the safe keeping of the records and the faithful discharge of their duties in office, which may be sued upon by the party injured, &c.”
 

 It is manifest, that the bond of $4000, was intended to secure the payment by the clerk to the proper officers entitled to receive the same, all tax fees, fines, &c., while the larger bond was designed as a security to the public for the safe keeping of the records, as well as to individuals for any money paid into office, to which they might he entitled. Such being the case, the question before us is, whether an individual can sue upon the bond which was not intended for his benefit, and thereby, to the extent of his recovery, lessen the security provided for the public officers of the county or State. The relators insist that they can do so, at least upon the present bond, for in addition to the condition for the payment to the proper officers of all such sums as were received by the clerk for taxes on suits, fees, &c., there is a general condition, that he “ shall collect, receive and pay over to the persons entitled to receive the same, all other monies which shall come into his hands by virtue of his office.” In support of their claims, they contend that whatever variance there may be in the penalty or condition of the bond, from the provisions prescribed by law, is cured by the act, 1842, chap. 61, (see Rev. Code, ch.
 
 19,
 
 sec. 9). They insist, therefore, that the penalty of four thousand dollars, instead of ten thousand; and the condition about paying over taxes, fees, &c., instead of the safe keeping of the records, &c., make no difference. "We think otherwise,
 
 *220
 
 for two reasons, the first of which is, that it would impose upon the sureties of the clerk a liability, which, so far as we can see, they never intended to incur; and the second is, that it would take away from the public officers, for whose benefit the bond was required to be given, the security which was intended for them. It is not stated in the case agreed, that the bond for ten thousand dollars was not given, and as wo are not to presume that the justices of the County Court, whose duty it was to take it., neglected that duty, we must suppose that it was given. "What reason is there, then, for allowing the relators to recoyer on the present bond? But we are inclined to think that if it did appear that no other bond, than.the present, was given, the neglect of the justices to perform their duty in taking the other bond, would not vary the case. The act of 1842, is a remedial act, and ought, therefore, to be construed favorably and literally, but we think it was never designed to go beyond the making good every official bond,
 
 for the purpose for which it was intended.
 
 To that extent it ought to receive the most liberal interpretation, so as to cure defects of every kind which ought to be cured. If we give it, by construction, a larger operation, we shall, in many cases, do injustice to the sureties, by extending their liability beyond what they engaged for, and they might well object,
 
 “non haee i/n fmdera veninme”
 
 We might also injure those, for whose use the bonds were required to be given, by taking away from them, or at least, by lessening, the security which the ,law had provided for them.
 

 The Revised Code requires only one bond to be given by the clerks of the county and superior courts, the penalty of which is fifteen thousand dollars, and the condition extensive enough to cover every possible default in office ; so that the question, which we now decide, cannot .be raised upon any clerk’s bond, given since the first day of January, 1856. See Revised Code, ch. 19, sec. 8.
 

 The judgment must be reversed, and a nonsuit entered according to the case agreed.
 

 Pee CuRiam, Judgment reversed..